THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RODNEY RICARDO BROWN, | CASE NO. C19-1377-JCC |
| Plaintiff, | ORDER |
| v. | |
| JP MORGAN CHASE BANK N.A., | |
| Defendant. | |

This matter comes before the Court on Defendant's unopposed motion for judgment on the pleadings (Dkt. No. 32). Having thoroughly considered Defendant's motion and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS Defendant's motion for the reasons explained herein.

I.      **BACKGROUND**

Plaintiff's mother Dorothy Brown is an 88-year old cancer survivor. (Dkt. No. 21 at 2, 5.) In 2019, she spent several months hospitalized or residing in assisted living before Plaintiff moved her to his house. (Dkt. Nos. 6 at 8, 21 at 4.) On May 16, 2019, Plaintiff brought Ms. Brown into one of Defendant's branch banks to open an account in her name and deposit a check from CW Title payable to Ms. Brown. (Dkt. No. 1-1 at 2.) Ms. Brown opened a Chase Total Checking Account with an account number ending in 5725. (*Id.*) When opening the account, Ms. Brown agreed to the terms and conditions of the deposit account agreement. (*See* Dkt. Nos. 6 at

3, 6-1 at 4, 21 at 6.)  The deposit account agreement specifies what Defendant may do if there are adverse claims for funds in the account and when Defendant may restrict the account:

**Adverse claims**

If there are conflicting instructions or there is any dispute regarding your account, we may take any action described in the following section or we may place funds in a court (this is called an interpleader action) for resolution. If any person notifies us of a dispute, we do not have to decide if the dispute has merit before we take further action. We may take these actions without any liability and without advance notice, unless the law says otherwise.

(Dkt. No. 6-1 at 13.) The deposit account agreement also authorizes Defendant to restrict the account or block or delay transactions under certain circumstances:

**Restricting your account; blocking or delaying transactions**

There are many reasons we may decline or prevent transactions to or from your account, but we generally do it to protect you or us, or to comply with legal requirements. We may decline or prevent any or all transactions to or from your account. We may refuse, freeze, or reverse or delay any specific withdrawal, payment or transfer of funds to or from your account, or we may remove funds from your account to hold them pending investigation, including in one or more of the following circumstances:

. . . .

We suspect that you may be the victim of a fraud, scam or financial exploitation, even though you have authorized the transaction(s); . . .

We suspect that any transaction may involve illegal activity or may be fraudulent; . . . .

We reasonably believe that doing so is necessary to avoid a loss or reduce risk to us. . . .

We will have no liability for any action we take under this section.

(*Id.*)

A week later, Plaintiff brought Ms. Brown to the branch to add his name to the account and to withdraw $1,500. (Dkt. Nos. 6 at 2–3, 21 at 5.) Plaintiff also agreed to the terms of the deposit account agreement. (*See* Dkt. No. 6-1 at 13) (providing that "[b]y using any of our deposit account services, you and anyone else identified as an owner of the account agree to the

ORDER
C19-1377-JCC
PAGE - 2

terms in this agreement."). According to Defendant's branch employees, Plaintiff then attempted to remove Ms. Brown's name from the account and withdraw all funds in the account. (*See* Dkt. No. 6 at 10.) The employees also reported that Ms. Brown appeared sedated and did not recall opening the account the previous week but stated that she wanted Plaintiff added to the account. (*Id.*) Plaintiff admits that he attempted to make a second withdrawal but otherwise disputes Defendant's description of the events. (*See* Dkt. No. 21 at 5.) Suspecting that Ms. Brown might be a victim of elder exploitation, the employees reported their concerns to Defendant's Global Security department, who in turn notified Washington State's Adult Protective Services. (Dkt. No. 6 at 10.) Defendant restricted the account, started an investigation, then informed Plaintiff about the account restriction and investigation. (Dkt. Nos. 1-1 at 3, 6 at 3.)

In August 2019, Plaintiff sued Defendant in King County Superior Court over control of the funds in the account. (Dkt. No. 1-1.) Defendant removed to this Court based on diversity. (*See* Dkt. No. 1.) Plaintiff brings claims for conversion, interference to chattel, fraud, violation of Washington's Consumer Protection Act ("CPA"), Wash. Rev. Code §19.86.010, *et seq.*, and violation of Washington's Law Against Discrimination ("WLAD"), Wash. Rev. Code § 49.60.030. (*Id.*) Defendant asserts counterclaims and impleads several other parties, asking the Court to resolve who is entitled to the funds in the account. (Dkt. No. 6.) The third-party Defendants are Ms. Brown; Plaintiff's brother, William Brown; Ms. Brown's grandson, Mario Roberson; and Ms. Brown's neighbor, Pamela Cremieux. (*See id.* at 6–7.) The Court granted Defendant's motion for appointment of a guardian ad litem to represent Ms. Brown and ordered the parties to nominate three candidates. (Dkt. No. 31.)

Defendant now moves for judgment on the pleadings as to both its interpleader action and Plaintiff's claims. Plaintiff has not filed a response to Defendant's motion. (Dkt. No. 32.) Defendant also provides a status report on the parties' meet-and-confer regarding the appointment of a guardian ad litem to represent Ms. Brown. (Dkt. No. 33.)

//

ORDER
C19-1377-JCC
PAGE - 3

## II.   DISCUSSION

### A.   Legal Standard

A motion brought under Federal Rule of Civil Procedure 12(c) "faces the same test as a motion under Rule 12(b)(6)." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Thus, "judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *McGann v. Ernst & Young*, 102 F.3d 390, 392 (9th Cir. 1996). While the Court accepts all factual allegations in the complaint when considering a Rule 12(c) motion, the Court "need not accept as true a legal conclusion presented as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although this pleading standard does not require detailed factual allegations, it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). After disregarding any "formulaic recitation of the elements of a cause of action," the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*

The Court may consider the allegations made in the pleadings, documents attached to the pleadings, documents incorporated by reference in the pleadings, and matters that are subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); Fed. R. Evid. 201; Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). Pursuant to Local Civil Rule 7(b)(2), "if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit."

### B.   Defendant's Interpleader Action

The purpose of an interpleader action is to resolve competing property claims and protect the party holding the property from multiple claims and liability. *See* Fed. R. Civ. P. 22 (a); *Premier Trust, Inc. v. Duvall*, 559 F.Supp.2d 1109, 1113 (D. Nev. 2008) (collecting cases). "[I]n order to avail itself of the interpleader remedy, a stakeholder must have a good faith belief that

there are or may be colorable competing claims to the stake." *Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 894 (9th Cir. 2012). This is not an onerous standard and the stakeholder is not responsible for sorting out the merits of conflicting claims. *See id.* Under Federal Rule of Civil Procedure 67(a), if "any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party—on notice to every other party and by leave of court—may deposit with the court all or part of the money or thing."

The deposit account agreement has been incorporated by reference in Defendant's pleadings in its interpleader and cross-claims action. *See Ritchie*, 342 F.3d at 907–08; (Dkt. No. 6-1). And there is no question that Plaintiff agreed to the deposit account agreement. (Dkt. No. 6-1 at 13.) Thus, there is no dispute in the pleadings that the deposit account agreement governs the terms of Plaintiff's and Defendant's relationship with regard to the account at issue. (*See* Dkt. No. 32 at 5.) The deposit account agreement permits Defendant to restrict the account to investigate and prevent financial exploitation. (Dkt. No. 6-1 at 13.) On May 16, 2019, Plaintiff brought Ms. Brown to deposit a large check from a title company. (Dkt. No. 1-1 at 2.) A week later, Plaintiff brought Ms. Brown back to the bank to add his name to the account. (Dkt. Nos. 6 at 2–3, 21 at 5.) And in the course of its investigation, Defendant learned that Ms. Brown's family members and friend are concerned that Plaintiff is taking advantage of Ms. Brown. (Dkt. Nos. 25 at 2–3, 30 at 1.) These events gave Defendant reason to suspect financial exploitation, which permitted Defendant to restrict and investigate the account, as well as file an interpleader action, pursuant to the deposit account agreement. (*See* Dkt. No. 6-1 at 13.)

To be granted judgment on the pleadings in its interpleader action, Defendant is merely required show a good faith belief that there are or may be competing colorable claims to the funds. *See* Fed. R. Civ. P. 22; *Michelman*, 685 F.3d at 894. Viewing the facts in the light most favorable to Plaintiff and the third-party Defendants, the Court FINDS that Defendant has easily cleared this low bar.  Therefore, Defendant's motion for judgment on the pleadings in its interpleader claim is GRANTED. Defendant's request to pay the funds remaining in the deposit

1    account at issue into the court registry is GRANTED, and Defendant is DISCHARGED from

2    any liability for the funds.

3    **C.      Plaintiff's Claims Against Defendant**

4           Defendant also moves for judgment on the pleadings as to Plaintiff's claims for

5    conversion, interference to chattel, fraud, violation of the CPA, and violation of the WLAD, and

6    asks the Court to dismiss the claims with prejudice. (Dkt. No. 32 at 2–3, 11–17.) Plaintiff has not

7    opposed to the motion, and the Court construes this as an admission that the motion has merit.

8    *See* W.D. Wash. Local Civ. R. 7(b)(2).

9                            1.   Conversion and Interference to Chattel

10          Under Washington law, conversion occurs "when a person intentionally interferes with

11   chattel belonging to another, either by taking or unlawfully retaining it, thereby depriving the

12   rightful owner of possession." *Alhadeff v. Meridian on Bainbridge Island, LLC*, 220 P.3d 1214,

13   1223 (Wash. 2009). "[T]here can be no conversion of money unless it was wrongfully received

14   by the party charged with conversion, or unless such party was under obligation to return the

15   specific money to the party claiming it." *Pub. Util. Dist. No. 1 of Lewis Cty. v. Washington Pub.*

16   *Power Supply Sys.*, 705 P.2d 1195, 1211 (1985). Washington does not recognize interference to

17   chattel as a claim separate from conversion. *See In re Marriage of Langham & Kolde*, 106 P.3d

18   212, 218 (Wash. 2005) (quoting *Meyers Way Dev. Ltd. P'ship v. Univ. Sav. Bank*, 910 P.2d

19   1308, 1320 (Wash. Ct. App. 1996) ("Conversion is the unjustified, willful interference with a

20   chattel which deprives a person entitled to the property of possession.").

21          Plaintiff's claim for conversion is premised on his assertion that he cannot access the

22   funds in the account. (*See* Dkt. No. 1-1 at 5.) But there is no dispute that the deposit account

23   agreement permitted Defendant to restrict the account when Defendant became concerned about

24   Ms. Brown's possible financial exploitation. (Dkt. No. 6-1 at 13.) Thus, Defendant's actions

25   were contractually authorized. Therefore, Defendant's motion is GRANTED as to Plaintiff's

26   conversion and interference to chattel claims.

ORDER
C19-1377-JCC
PAGE - 6

2. Fraud

In order to prevail on a claim for fraud, a plaintiff must show by clear, cogent, and convincing evidence the following nine elements: "(1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff." *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996). The plaintiff must also must support their claims with specific and detailed factual allegations. *See* Fed. R. Civ. P. 9(b). This rule requires that a complaint allege the "who, what, when, where, and how" of the fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

In support of his fraud claim, Plaintiff asserts that Defendant (1) made representations about Plaintiff's ability to access his funds in the account as a joint owner and (2) promised to "engage with Plaintiff, respond to him, and treat him fairly by putting him at the 'heart' of Chase's customer centric behavior." (*See* Dkt. No. 1-1 at 6.) Plaintiff alleges that Defendant's statements were fraudulent because Defendant did not allow him to access the funds in the account and treated him unfairly by restricting the account. (*See id.*) But as discussed above, Defendant had a contractual right to restrict the account because it had a basis for suspecting financial exploitation. Thus, Plaintiff fails to state a claim for fraud because his complaint does not allege facts demonstrating that Defendant's contractually-authorized actions were materially false. *See Stiley*, 925 P.2d at 204. Therefore, Defendant's motion is GRANTED as to Plaintiff's fraud claim.

3. CPA Claim

To prove a violation of the CPA, a plaintiff must demonstrate the following five elements: "(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) a public interest impact; (4) [an] injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 532

1    (Wash. 1986). The failure to meet any of these elements is fatal to a CPA claim. *Id.* at 535. The

2    first two elements may be established independently or "by a showing that the alleged act

3    constitutes a per se unfair trade practice." *Id.* "A per se unfair trade practice exists when a statute

4    which has been declared by the Legislature to constitute an unfair or deceptive act in trade or

5    commerce has been violated." *Id*.

6          Plaintiff alleges that Defendant violated the CPA when it restricted the account. (Dkt. No.

7    1-1 at 7.) As discussed above, Defendant had a contractual right to restrict the account it had

8    reason to suspect financial exploitation. Furthermore, Defendant promptly notified Plaintiff of its

9    decision to restrict the account, thus undermining any claim of deception. (Dkt. No. 1-1 at 3.)

10   Thus, the complaint does not allege facts demonstrating that Defendant engaged in an unfair or

11   deceptive act or practice. Therefore, Defendant's motion is GRANTED as to Plaintiff's CPA

12   claim.

13                 4.   <u>WLAD Race Discrimination</u>

14          To establish a *prima facie* case of race discrimination in a place of public accommodation

15   under the WLAD, a plaintiff must establish that: (1) he is a member of a protected class, (2) the

16   defendant's establishment is a place of public accommodation, (3) the defendant discriminated

17   against him by not treating him in a manner comparable to those outside the protected class, and

18   (4) the protected status was a substantial factor causing the discrimination. Wash. Rev. Code

19   § 49.60; *Demelesh v. Ross Stores*, 20 P.3d 447, 456 (Wash. Ct. App. 2001).

20          The facts pleaded in Plaintiff's complaint fail to establish a causal nexus between

21   Plaintiff's race and Defendant's restriction of the account. Furthermore, Washington law

22   provides that a public accommodation may refuse service based on "behavior or actions

23   constituting a risk to property or other persons." Wash. Rev. Code § 49.60.215. Because

24   Defendant acted to prevent harm to Ms. Brown, Defendant's actions to restrict the account are

25   statutorily exempt. *Id.* Thus, Plaintiff fails to state a WLAD race discrimination claim because

26   the uncontroverted facts alleged in the pleadings do not show that Plaintiff's race was a

substantial factor in Defendant's decision to restrict the account. Therefore, Defendant's motion is GRANTED as to Plaintiff's WLAD race discrimination claim.

## III.    CONCLUSION

For the foregoing reasons, Defendant's motion for judgment on the pleadings (Dkt. No. 32) is GRANTED and Defendant is DISMISSED from this action with prejudice and without costs or fees to any party. Defendant is discharged from all liability to Plaintiff and third-party Defendants with respect to the account funds. The Court ORDERS Defendant to deposit the funds presently contained in the account at issue with the court registry.

DATED this 28th day of April 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE